**REVISED JANUARY 12, 2017**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-10155

United States Court of Appeals
Fifth Circuit

**FILED**

December 22, 2016

Lyle W. Cayce
Clerk

SPEAR MARKETING, INCORPORATED,

  Plaintiff - Appellant

v.

BANCORPSOUTH BANK; ARGO DATA RESOURCE CORPORATION,

  Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before KING, OWEN, and HAYNES, Circuit Judges.

KING, Circuit Judge:

This case is before us for the second time. Following our first decision, the district court awarded Defendants–Appellees nearly $1 million in attorneys' fees under state law, or, in the alternative, under the Copyright Act. Now, Plaintiff–Appellant Spear Marketing, Inc. appeals this award, arguing that the district court erred in awarding attorneys' fees under state law because its state law claim was preempted and erred in alternatively awarding attorneys' fees under the Copyright Act because it never pleaded or litigated a copyright claim. We conclude that no court has ever held the state law claim

to be preempted, and therefore the district court did not err in awarding attorneys' fees under the state law.

## I.     Factual and Procedural Background

In this appeal, Plaintiff–Appellant Spear Marketing, Inc. (SMI) challenges the district court's award of attorneys' fees to Defendants–Appellees BancorpSouth Bank and Argo Data Resource Corp. (Defendants).  This appeal is the second time that this litigation has come before this court.  *See Spear Mktg., Inc. v. BancorpSouth Bank* (*Spear Marketing I*), 791 F.3d 586 (5th Cir. 2015).  Because the primary disagreement between the parties is over what was decided by the district court in the underlying litigation and by this court in *Spear Marketing I*, it is necessary for us to provide a detailed review of this case's procedural history pertinent to the resolution of this appeal.

## A.  Initial Procedural History and Grant of Defendants' Motion for Summary Judgment

SMI is a small software developer that produces VaultWorks, a computer program that assists banks in managing their cash inventories.  *Id.* at 589–90. BancorpSouth Bank (BCS) was one of the banks that used VaultWorks; however, in February 2012, BCS terminated its agreement with SMI because BCS had reached an agreement with Argo, another software developer for the banking industry.  *Id.* at 590–91.  BCS agreed to license Argo's new program, Cash Inventory Optimization (CIO), which included functions similar to SMI's VaultWorks.  *Id.*

In August 2012, SMI filed its Original Petition against Defendants in Texas state court, primarily alleging that Defendants had stolen trade secrets related to the operation of VaultWorks in order to create CIO.  The allegedly stolen trade secrets included both technical data and information, such as formulas, algorithms, and methods of operation, as well as business information, such as customer lists, cost and pricing information, financial

information, and personnel details. The Original Petition asserted ten causes of action, including claims for misappropriation of trade secrets,[1] theft of trade secrets under the Texas Theft Liability Act (TTLA),[2] and conversion. SMI did not assert a copyright claim.

In September 2012, Defendants removed the case to federal court on the ground that the claims in the Original Petition were completely preempted by the Copyright Act.[3] *See* 17 U.S.C. § 301 (expressly preempting all causes of

---

[1] To establish a claim for misappropriation of trade secrets under Texas law, a plaintiff must show: "(a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff." *Spear Marketing I*, 791 F.3d at 600.

[2] To establish a claim for theft of trade secrets under the version of the TTLA in effect at that time, a plaintiff had to show: (1) the defendant knowingly (a) stole the plaintiff's trade secret, (b) made a copy of an article representing the trade secret, or (c) communicated or transmitted a trade secret; and (2) the plaintiff sustained damages as a result. *See* Tex. Penal Code § 31.05; Tex. Civ. Prac. & Rem. Code § 134.005(a) (2012).

[3] At the outset, a brief detour into preemption terminology is instructive. "Complete preemption" is a jurisdictional doctrine sometimes invoked upon removal to federal court. *See* 14B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3722.2 (4th ed. 2016). The complete preemption doctrine provides that the preemptive force of some federal statutes is so strong that "it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule," such that removal is possible. *GlobeRanger Corp. v. Software AG* ("*GlobeRanger I*"), 691 F.3d 702, 705 (5th Cir. 2012) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)). The Copyright Act is one such federal statute that completely preempts the substantive field. *Id.* at 706. Complete preemption for the purpose of establishing federal subject matter jurisdiction is thus a purely jurisdictional doctrine that is distinct from ordinary preemption. *See Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011). Whereas complete preemption establishes federal subject matter jurisdiction over a state law claim, ordinary preemption (variably called "defensive preemption") is an affirmative defense that a defendant can invoke "to defeat a plaintiff's state-law claim on the merits by asserting the supremacy of federal law." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1261 n.16 (11th Cir. 2011). Complete preemption and ordinary preemption therefore may not perfectly overlap; a state law claim may be completely preempted (meaning there is federal jurisdiction over it) but ultimately not entirely preempted on the merits (meaning that preemption provides a defense against only some portion of the state law claim, leaving a viable state law claim to be litigated on the merits). *See GlobeRanger I*, 691 F.3d at 709 (recognizing that "at least part of the factual basis for GlobeRanger's claims may fall outside the scope of copyright" and "[i]f none of the claims were preempted . . . there would not be federal jurisdiction under the complete preemption doctrine"). For instance, a TTLA claim based on multiple wrongful acts may not be entirely preempted on the merits if only some of those acts violate rights that are equivalent to copyright. SMI conceded this distinction at oral argument.

action falling within the subject matter of the Copyright Act, with a few exceptions not applicable here). Defendants noted that each of SMI's claims concerned the subject matter of copyright and highlighted how the Original Petition alleged that "Defendants 'copied objects, materials, devices or substances, including writings' belonging to SMI and then 'communicated and transmitted' the copied materials." (Emphasis omitted.) Shortly after removal, Defendants moved to dismiss all of SMI's claims, arguing, in relevant part, that each claim was preempted by the Copyright Act.

In response to the motion to dismiss, SMI filed a First Amended Complaint (FAC), which omitted from its TTLA claim allegations of copying, communicating, and transmitting writings and other materials, and deleted its conversion claim, leaving nine total claims. Defendants then filed a second motion to dismiss, arguing once again, in relevant part, that each claim in the FAC was preempted by the Copyright Act. In turn, SMI moved to remand the litigation to Texas state court, arguing that the claims in the FAC were not preempted by the Copyright Act, and thus the district court lacked subject matter jurisdiction over the claims in the FAC.

In May 2013, the district court denied SMI's motion to remand. First, the district court explained that whether removal was proper should be determined based on the claims in the Original Petition, not the FAC. Second, the district court found that the TTLA claim in the Original Petition was completely preempted by the Copyright Act for the purposes of establishing federal jurisdiction. According to the district court, at least some of the allegedly stolen trade secrets on which the TTLA claim and the conversion claim in the Original Petition were based fell within the subject matter of copyright. In July 2013, the district court denied Defendants' second motion

to dismiss. Regarding Defendants' preemption argument, the district court found that at least some of SMI's alleged stolen trade secrets, "such as customer lists, business plans, marketing strategies, and customer preferences," fell outside the coverage of the Copyright Act and thus were not preempted. As a caveat, the district court noted that, once the record was fully developed, it may find "that some or all of the state law claims are in fact preempted, and thus [it] may revisit the issue of preemption later in the case."

In September 2013, Defendants moved for summary judgment on all nine claims in the FAC, arguing that (1) all of SMI's allegations were based on the alleged misappropriation of trade secrets, and because SMI could not show that Defendants used SMI's trade secrets in developing CIO, none of the claims was viable; (2) no trade secrets existed; and (3) all of the claims were preempted by the Copyright Act. In June 2014, the district court granted Defendants' motion for summary judgment on all nine claims. The district court concluded that SMI could not establish a trade secret misappropriation claim because SMI failed to show Defendants' unauthorized use of those trade secrets, an essential element of a claim for misappropriation of trade secrets. And the district court found that each of SMI's other state law claims, including its TTLA claim, failed because of the insufficient evidence of Defendants' use of SMI's trade secrets. Given that all of SMI's claims failed on the merits, the district court declined to address Defendants' preemption argument. The district court accordingly dismissed all of SMI's claims with prejudice.

## B. *Spear Marketing I*

SMI appealed both the order denying its motion to remand and the order granting Defendants' motion for summary judgment and dismissing all claims with prejudice, and this court affirmed. *Spear Marketing I*, 791 F.3d at 591, 598, 600–03. First, with regard to the motion to remand, *Spear Marketing I* held that the claims in the Original Petition, not the FAC, dictated whether

federal jurisdiction existed because that was the operative complaint at the time of removal. *Id.* at 591–93; *see Louisiana v. Am. Nat. Prop. & Cas. Co.*, 746 F.3d 633, 636 (5th Cir. 2014) ("[J]urisdictional facts are determined at the time of removal, and consequently post-removal events do not affect that properly established jurisdiction."); *Brown v. Sw. Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990) ("When a defendant seeks to remove a case, the question of whether jurisdiction exists is resolved by looking at the complaint at the time the petition for removal is filed." (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537–38 (1939))). Looking to the claims in the Original Petition, *Spear Marketing I* applied the two-prong complete preemption test[4] and found that (1) a subset of SMI's allegedly stolen trade secrets, "the technical trade secrets," fell within the subject matter of copyright, and (2) the TTLA claim in the Original Petition, which alleged wrongful acts such as "[c]opying, communicating, and transmitting," was equivalent to a copyright claim. *Spear Marketing I*, 791 F.3d at 594–98. Thus, *Spear Marketing I* held that the state law claims in the Original Petition were completely preempted by the Copyright Act, and, accordingly, the district court "properly exercised jurisdiction over" the suit. *Id.* at 598.

*Spear Marketing I* then reviewed the district court's grant of summary judgment and dismissal with prejudice, this time considering the claims in the FAC because that was by then the operative complaint. It analyzed SMI's claim for misappropriation of trade secrets and agreed with the district court that SMI failed to show a genuine dispute regarding an essential element of a misappropriation claim because SMI failed to show that Defendants used

---

[4] To determine whether a state law claim is completely preempted by the Copyright Act, we ask: (1) Does the claim fall within the subject matter of the Copyright Act, *see* 17 U.S.C. § 102? and (2) Does the state law protect rights that are equivalent to any of the exclusive rights protected by the Copyright Act, *see* 17 U.S.C. § 106? *Spear Marketing I*, 791 F.3d at 594.

SMI's trade secrets. *Id.* at 600–03. With respect to the other eight claims in the FAC, including the TTLA claim, *Spear Marketing I* held that SMI had waived its right to appeal summary judgment on these claims by entirely omitting any mention of them from its opening brief. *Id.* at 602–03.

## C. Award of Attorneys' Fees

Following the decision in *Spear Marketing I*, Defendants filed a motion in the district court for attorneys' fees and costs under the TTLA or, alternatively, under the Copyright Act, 17 U.S.C. § 505.[5] In relevant part, Defendants argued that they prevailed on the merits of SMI's TTLA claim, and therefore, were entitled to attorneys' fees under the TTLA.[6] In opposition, SMI argued that an attorneys' fees award under the TTLA was not proper because that claim was preempted and therefore Defendants had not prevailed on the claim's merits. In January 2016, the district court granted Defendants' motion for attorneys' fees under the TTLA or, alternatively, under the Copyright Act, explaining that its award would not vary between the two statutes.[7] The district court first addressed the argument for attorneys' fees under the TTLA. The district court viewed itself as facing a dilemma: it needed to decide "whether to treat Defendants as prevailing parties under the TTLA because they successfully defended against SMI's TTLA claim, despite the fact that [*Spear Marketing I*] later held the TTLA claim was completely preempted."

---

[5] Section 505 of the Copyright Act provides that "[i]n any civil action under [the Copyright Act], the court in its discretion may allow the recovery of full costs by or against any party . . . [and] may also award reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

[6] Under the TTLA, anyone who "prevails" in a TTLA suit "shall be awarded court costs and reasonable and necessary attorney's fees." Tex. Civ. Prac. & Rem. Code § 134.005(b). Texas courts have interpreted "prevails" to include parties who successfully defend against a TTLA claim, such as achieving a dismissal with prejudice. *See, e.g.*, *Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702, 706–07 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

[7] The district court also addressed the amount of fees and costs awarded, but these portions of the judgment are not challenged by either party on appeal.

Finding no binding legal authority on how to answer this question, the district court awarded nearly $1 million in attorneys' fees to Defendants because the TTLA claim was fully adjudicated, necessitating the expenditure of attorneys' fees and costs by the parties.[8]  SMI timely appealed the award.

## II.  Award of Attorneys' Fees under the TTLA

We review the district court's award of attorneys' fees under its first alternative basis: the TTLA.  A district court may not award attorneys' fees "unless a statute or contract provides" the basis for such an award. *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015) (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010)).  A state law, such as the TTLA, can provide the basis for an attorneys' fee award if that state law supplies the rule of decision. *See Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 415 (5th Cir. 2005).  We review de novo the question of whether a state law supplied the rule of decision. *Id.*

Here, the district court interpreted *Spear Marketing I* as holding that the TTLA claim was preempted by federal law.  The district court thus viewed itself as facing a dilemma.  On the one hand, it could not award attorneys' fees under the TTLA because the TTLA claim was preempted, and thus federal law supplied the rule of decision.  On the other hand, the TTLA claim was adjudicated on the merits—it was dismissed with prejudice—and therefore, the TTLA's attorneys' fees provision should apply.  The crux of the dispute between the parties is not over the law, but rather over the district court's interpretation of *Spear Marketing I*.  Put another way, the parties do not

---

[8] With regard to its alternative basis for the attorneys' fee award, the Copyright Act, the district court found persuasive Fourth Circuit precedent holding that a preempted state law claim constitutes a civil action for the purposes of section 505 of the Copyright Act, and therefore, a district court has discretion to award fees under section 505 when a state law claim is found to be preempted by the Copyright Act. *See Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 233 (4th Cir. 1993).

dispute that, if the TTLA claim was preempted, then the award of attorneys' fees was improper. Nor do they dispute the converse—that, if the TTLA claim was not preempted, then the award of attorneys' fees was proper. Specifically, SMI argues on appeal that the district court erred in awarding attorneys' fees under the TTLA because *Spear Marketing I* held that the TTLA claim was completely preempted, and, according to SMI, when a claim is completely preempted by federal law, an award of attorney's fees cannot be based upon state law. Moreover, SMI urges, the TTLA permits awards only to a party "who prevails in a suit under" the TTLA, and given that the TTLA claim was rendered a nullity through preemption, Defendants were not prevailing parties under the TTLA. Finally, SMI argues that *Spear Marketing I*'s preemption holding became the law of the case and superseded any conflicting findings made by the district court.[9]

We disagree. The TTLA claim in the FAC—the operative complaint at the time of the attorneys' fee award—was never held to be preempted. *Spear Marketing I* addressed only the TTLA claim as it was pleaded in the Original Petition and did not consider the TTLA claim in the FAC. This is significant because the TTLA claim in the FAC was distinct from that in the Original Petition and specifically omitted allegations that were equivalent to copyright, with the intention of avoiding preemption. And the district court also never held that the FAC's TTLA claim was preempted. Rather, the TTLA claim in the FAC was litigated and dismissed on the merits during summary judgment,

---

[9] SMI also argues that Defendants should be judicially estopped from arguing that the TTLA claim was preempted, but SMI did not raise this argument until its reply brief and thus waived it. *See In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 459 n.3 (5th Cir. 2010).

and therefore it was proper to award attorneys' fees under the TTLA because that law supplied the rule of decision.[10]

The district court mistakenly interpreted *Spear Marketing I* as holding that the TTLA claim in the FAC was preempted.[11] Nevertheless, we conclude the district court reached the correct outcome in awarding attorneys' fees under the TTLA. The district court's misunderstanding stems from its failure to distinguish between the TTLA claim in the Original Petition and that in the FAC. As our foregoing review of the procedural history should make clear, *Spear Marketing I* did not hold that the TTLA claim as asserted in the FAC was preempted. In fact, *Spear Marketing I* did not address the TTLA claim in the FAC at all. Rather, *Spear Marketing I* considered the TTLA claim only in the context of reviewing the district court's denial of SMI's motion to remand. In reviewing this denial, *Spear Marketing I* considered the TTLA claim only as it was asserted in the Original Petition because that was the operative complaint at the time of removal. *Spear Marketing I*, 791 F.3d at 591–98. Indeed, in conducting the equivalency prong of the preemption test comparing the TTLA claim and a copyright claim, *Spear Marketing I* quoted language from the TTLA claim in the Original Petition that was specifically omitted from the TTLA claim in the FAC, such as allegations that SMI's confidential information was "communicated" and "transmitted." *Id.* at 598. *Spear Marketing I* concluded that the TTLA claim in the Original Petition was

---

[10] Because we agree with Defendants that the TTLA claim was never held to be preempted, we do not address their alternative bases for affirming the award of fees under the TTLA.

[11] The district court's confusion may stem from *Spear Marketing I*'s footnote 62, which discussed the course of conduct a district court can take after a claim is found to be completely preempted. *Spear Marketing I*, 791 F.3d at 598 n.62. Yet *Spear Marketing I* only considered the TTLA claim as it was asserted in the Original Petition, and thus footnote 62 is merely dicta because the FAC's TTLA claim—not the Original Petition's TTLA claim—was by then the operative claim.

completely preempted, and thus removal was proper and remand not warranted. *Id.* This analysis makes clear that *Spear Marketing I* did not reach the question of whether the FAC's TTLA claim was preempted.

SMI urges that even if *Spear Marketing I* only dealt with the TTLA claim in the Original Petition, its holding necessarily means that the FAC's TTLA claim is equally preempted because it is based on the same trade secrets. Yet this argument ignores the fact that the claims in these two pleadings are distinct. SMI filed the FAC in response to Defendants' motion to dismiss the Original Petition on preemption grounds. SMI described its reasons for filing the FAC in part as an attempt to avoid Defendants' preemption argument by omitting allegations of wrongful copying, communicating, and transmitting of trade secrets, all of which "fall squarely within the exclusive rights protected by [the Copyright Act]." *Id.* Accordingly, *Spear Marketing I*'s holding that the TTLA claim in the Original Petition was preempted does not necessarily extend to the TTLA claim in the FAC. For this same reason, SMI's law of the case argument also fails. While *Spear Marketing I* may be highly persuasive, it does not constitute the law of the case such that the FAC's TTLA claim is necessarily preempted. *See Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) ("[A]n issue that is not expressly or implicitly decided on appeal does not become part of the law of the case.").

We also note that in addition to limiting its analysis to the TTLA claim in the Original Petition, *Spear Marketing I* limited its analysis to complete preemption for the purposes of establishing federal jurisdiction and did not reach the question of "ordinary" preemption—that is, whether federal preemption provided a defense against all the trade secrets upon which SMI's TTLA claim was based. Contrary to the district court's assertion, *Spear Marketing I* said nothing to suggest that the TTLA claim was entirely preempted, *i.e.*, that every trade secret alleged to be stolen fell within the

subject matter of copyright. To the contrary, *Spear Marketing I* suggested that it only considered a portion of the trade secrets alleged to be stolen—technical trade secrets (not the business trade secrets that SMI alleged were also stolen)—in conducting its preemption analysis. *Spear Marketing I*, 791 F.3d at 597 ("When we apply this [preemption] principle to SMI's claims, we see that the *technical trade secrets* found within VaultWorks fall within the subject matter of copyright." (emphasis added)). Having made this finding, the court needed to go no further because complete preemption was established on the basis of just this subset of trade secrets. *Spear Marketing I* thus not only did not reach the TTLA claim in the FAC but also did not reach the question of whether the trade secrets comprising the TTLA claim were entirely preempted on the merits.

In addition to the absence of any preemption holding by *Spear Marketing I* on the TTLA claim in the FAC, there was also never a holding by the district court that the TTLA claim in the FAC was preempted. To the contrary, in its order denying Defendants' motion to dismiss the FAC on preemption grounds, the district court concluded that at least some of the allegedly stolen trade secrets comprising the TTLA claim fell outside the subject matter of copyright and thus were not preempted. The district court specifically cited SMI's "customer lists, business plans, marketing strategies, and customer preferences" as trade secrets falling outside the subject matter of copyright and thus not entirely preempted. The court noted that it may revisit this conclusion later on after the record was fully developed, but it never did. And later on, in granting Defendants' motion for summary judgment, the district court explicitly declined to address whether the FAC's TTLA claim was preempted. Indeed, the basis on which the district court granted summary judgment on the TTLA claim was that SMI failed to show that Defendants had actually stolen its trade secrets, an essential element of a TTLA claim. *See*

Tex. Penal Code § 31.05; Tex. Civ. Prac. & Rem. Code § 134.005(a) (2012). The district court even recognized that it had never made such a finding of preemption when it was addressing the attorneys' fees motion. Clearly, the district court never held that the TTLA claim in the FAC was preempted.

We conclude that, at the time of the motion for attorneys' fees, no court had ever held that the TTLA claim in the FAC was preempted. Rather, the district court adjudicated the TTLA claim in the FAC on the merits, dismissing it with prejudice. The TTLA therefore supplied the rule of decision in this case, and, accordingly, the district court did not err by awarding attorneys' fees under the TTLA.[12] *See Walker*, 415 F.3d at 415 ("State law controls . . . the award of . . . fees . . . where state law supplies the rule of decision." (quoting *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002))); Tex. Civ. Prac. & Rem. Code § 134.005(b) (providing that anyone who "prevails" in a TTLA suit "shall be awarded court costs and reasonable and necessary attorney's fees").

## III.   Conclusion

For the foregoing reasons, we AFFIRM the district court's attorneys' fees award.

---

[12] Because we conclude that attorneys' fees were properly awarded under the TTLA, we do not address the district court's alternative grounds for awarding the fees under the Copyright Act.